Filed 8/17/21  P. v. Davis CA4/2
See Dissenting Opinion

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E074748 |
| v. | (Super.Ct.No. ICR22535) |
| JIM DALE DAVIS, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  John D. Molloy, Judge.  Affirmed.

Tracy A. Rogers, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Kristine A. Gutierrez and Jennifer B. Troung, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

In 1996, a jury convicted Jim Dale Davis, the petitioner herein, along with Theodis Nathaniel Brown and Jerome Pellum Holland of three counts of first degree murder (Pen. Code, § 187),[1] during which a principal was armed with a handgun (§ 12022, subd. (a)(1)) and all of which occurred during a robbery and burglary (§ 190.2, subd. (a)(17)). The jury further found true the multiple murder special circumstance as to each defendant. (§ 190.2, subd. (a)(3).) Each was sentenced to four concurrent terms of life without the possibility of parole, plus one year.

In 2019, following the passage of Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) and the enactment of section 1170.95, defendant petitioned for resentencing. The trial court denied the petition on the ground that defendant's jury was instructed pursuant to former CALJIC Instruction No. 8.80.1, that it could not make findings on the special circumstance allegation without first finding that defendant was a major participant and that he acted with reckless disregard, such that even following the amendments to sections 188 and 189, the convictions were valid. Defendant appealed.

---

[1] All further statutory references are to the Penal Code, unless otherwise indicated.

2

On appeal, defendant argues that the 1996 special circumstances finding, which preceded the holdings of *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*), and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), does not suffice under current law.  We affirm.

## BACKGROUND

The facts are taken (with editing of some facts relating to the codefendants for brevity) from the record and decision in Davis's direct appeal, *People v. Brown et al.,* (Oct. 6, 1998, E018586) [nonpub. opn.].  Defendant requested that we augment the record with the jury instructions given in the trial, which were part of the record on appeal and we granted it.

*Events Leading Up to the Murders*

In March 1993, petitioner Jim Davis lived with his wife, two children, and Charity Zimmerle.  He was selling methamphetamine from March through May of 1993 with Zimmerle's assistance.

Victim Robert Hogue was also selling methamphetamine in April of 1993.  Davis bought methamphetamine from Hogue a couple of times in the beginning of April, but stopped doing business with him because he did not like Hogue's dope.  Hogue lived in an upstairs apartment at the One Quail Place complex in Palm Desert.  It was about 11 miles from Davis's house.

Approximately two weeks before the killings, Hogue refused to "front" Davis methamphetamine because Davis did not have any money.  This upset Davis.  Also, a few weeks before the killings, Davis told Zimmerle he wanted to kill victim Jerry Burris.

3

Sometime after this, but before the killings, Davis told Zimmerle they would invite Burris to dinner and kill him because Burris knew too much. Zimmerle thought Davis was joking about killing Burris on both occasions.

About April 17, 1993, Theodis Brown, Orlando "Bone" Watley, and Kerry "K.J." Parker[2] discussed a robbery plan with an individual named Damion Johnson in Johnson's bedroom at his group home. Brown said they planned to rob a White male who had a substantial amount of drugs, money and firearms and that he, Brown, could start a little business with the proceeds from the robbery. Watley indicated the man lived upstairs somewhere in Palm Springs or Palm Desert. Brown told Johnson that they needed a fourth person for the robbery and asked him to be that person. Because Johnson had been placed in juvenile hall for selling drugs in the past, he declined to take part in the robbery. Brown, Watley and Parker were wearing long black trench coats during this discussion. At one point, Brown and Watley showed Johnson the black ski masks they planned to use in the robbery. Johnson's foster mother walked into the room during this. When she did so, Brown and Watley attempted to hide or stow the masks. At this point, Watley had no injuries.

A few days later, Brown and Johnson continued the discussion of the robbery at Indio High School, where Johnson was a student and Brown was a part-time security guard. Brown repeatedly tried to convince Johnson to help with the robbery. Brown

---

[2] Parker was defendant Brown's step-sibling's cousin, and had lived with Brown's family before the crimes. Parker's direct appeal was decided under a different case number, *People v. Parker,* E021559 [opn. following retransfer from the California. Supreme Court, filed February 19, 2002].

4

explained he planned to have two people go inside and gather the money, drugs and guns while two others held whoever was in the apartment at gunpoint on their knees. Parker joined the discussion at one point.

On April 19, 1993, Kandi Croudy told Davis that victim Jeremy Burris had threatened her life during an earlier conversation about some property Burris had stolen from her friends. Croudy had known Davis for about six or eight months at this time. She was laughing about Burris's threat when she told Davis about it. Davis assured Croudy that, "he would be taken care of," or "he would take care of it." He told her, "You don't have to worry about a small little shit like that. It's going to be taken care of in a couple of days." Davis had already helped retrieve some of the property Burris had stolen. Burris had also robbed Davis and was not allowed around his house.

A couple of days before the killings, Burris told Davis, "Give me a line or I'm going to nark on you." Davis did not appear to regard this as a joke.

*The Burglary, Robbery and Killings*

On the afternoon of April 21, 1993, a 5-foot 10-inch, 200-pound African-American man parked Holland's truck across the street from Davis's house and walked over to Davis's driveway. That evening, victim Burris, along with Watley, Parker, Holland and Davis, was at Davis's house. Around 9:00 p.m. Davis met with Brown for a few minutes by the gate outside Davis's home. By midnight, neither Watley, Parker, Burris nor Holland were at the home. Davis was not in his bedroom at this time, and although Zimmerle thought Davis was home, she did not know where he was. Watley's

5

medical card, and Parker's and Watley's black sock hats were in Davis's bedroom. They had never left things like this in Davis's bedroom before.

Meanwhile, four teenagers, including Burris's brother, were visiting victims Hogue and Valerie Arnold at Hogue's apartment. During their visit, the group ingested methamphetamine which Hogue retrieved from a three-inch by five-inch brown wooden box on the living room table. It was this box of drugs which the prosecution alleged later became the object of the robbery and burglary. The group also smoked some marijuana. The four teenagers left on bicycles about 12:30 the next morning. Victim Burris had not been present during their visit.

About 1:30 a.m., the woman who lived across the hall from Hogue heard what sounded like six gunshots, followed by an unfamiliar male voice saying, "No." The neighbor did not call 9-1-1 because she was not sure if the sounds she heard were gunshots.

A woman and a man were at the bottom of the stairs by Hogue's apartment when the shots were fired. The man recalled that he heard about three or four gunshots. About a minute later, the couple saw what appeared to be two men dressed in dark jackets with bandannas on their heads and faces run past them. The couple could not see what race the men were. One of the men appeared to be carrying a foot-long object under his jacket. The two men ran to the parking lot and dove into the back of a slow-moving small gray Mazda pickup truck, which looked similar to the one Holland owned.

6

A security guard for the apartment complex saw a silver truck which looked similar to Holland's driving through the complex with its headlights turned off at this time. It had Nevada plates that began with 85Z or B5Z. The truck exited the parking lot and stopped at an intersection. The guard saw the arm of an African-American man slap the back window of the truck and he heard him yell, "go." The driver, a light complected African-American male, then ran a red light, turned on the headlights and turned left on Highway 111.

About 3:55 a.m. that day, Croudy arrived at Hogue's apartment. Hogue's front door was open about eight inches, the television was blaring and the lights were on. She called Hogue's name; nobody responded. She looked inside the open door and saw a body propped up against the couch and someone's legs on the floor. Croudy opened the door a little farther, looked inside the apartment and realized the people inside were hurt or dead. Croudy went to Hogue's neighbor's apartment and called 9-1-1. She also called Davis's house, and a couple of other people and told them what she had seen. Croudy also called victim Burris's mother, looking for him. She had not recognized Burris's body in Hogue's apartment. Burris's mother had called Davis's house around 3:00 a.m., looking for her son.

Riverside County Sheriff's Department deputies arrived at Hogue's apartment at 4:10 a.m. They found victim Burris lying with his back against the couch, victim Arnold slumped against a love seat and victim Hogue lying in the living room with his head in the hallway. The apartment did not appear to have been ransacked.

A Riverside County Sheriff's Department sergeant arrived at Hogue's apartment about 5:30 a.m. He found no signs of a forced entry or disturbances in the bedroom or living room. He found a black box with a microphone inside of it on the coffee table; he did not find the brown wooden box there or anywhere in the apartment. He found the following items in Hogue's bedroom: methamphetamine in a fanny pack; two baggies of marijuana; a peanut butter jar which contained marijuana; smoking paraphernalia; a triple beam scale; a funnel; a "pay-owe" book; baggies and a total of $3,000 in the pockets of several garments which were hanging in the closet. He found $200 in Hogue's right front pocket and a quarter gram of rock-like methamphetamine in a fanny pack on Burris. He did not find any firearms in the apartment. He opined methamphetamine and marijuana had been sold or were being sold from Hogue's apartment based on the items found.

Also around 4:00 or 5:00 a.m. on April 22, 1993, Watley and Parker arrived at Lisa Smalling's house in Indio. Smalling sold methamphetamine for Brown during the months of April and May of 1993. Watley and Parker were dressed in long black coats and khaki pants and Watley was wearing gloves and a black knit beanie. Brown arrived at Smalling's house about an hour later. He was not wearing a jacket. Brown looked tired, but not sick. The four of them conversed and at one point Watley said, "I did it," "I killed them," and "I killed the bitch." Although Watley did not say who "the bitch" was, he had referred to victim Arnold earlier that month as "the bitch." Smalling recalled that Brown had told her that Watley did not like Arnold and Arnold occasionally stayed at the

8

One Quail Place apartments.  Smalling said that Watley had a fresh cut on his hand that morning, as well as dried blood near the cut.

Meanwhile, about 4:00 or 4:30 a.m. on the day of the killings, defendant Davis went to his neighbor's house to make a telephone call, even though the phone in his own home was working.  Davis made a couple of calls, conversed with the neighbor and then told him, "Well, if anybody asked [*sic*] you I was home."  The neighbor recalled Davis was sweating, which was unusual at that time of the morning.  Davis also seemed nervous, but this was not unusual for him.  Davis stayed at the neighbor's house for about 15 to 20 minutes and returned at around 6:00 a.m. to use the phone again.  Davis again told the neighbor, "If anybody asked [*sic*] you, I was home."

About 6:00 a.m. that day, Davis woke Zimmerle and told her that Hogue had been shot.  Holland was present when Davis made this statement, having returned to Davis's by 6:00 a.m. that morning.  Holland was also at Davis's residence around noon that day.  Around 11:00 a.m., one of Davis's acquaintances, Linda Earlywine, arrived at his home.  A stressed and tired Davis told her that his friend had been murdered the night before and that he had been awake all night.  Davis did not appear to be grieving.  David told Earlywine, "It shouldn't have went [*sic*] that way."  Earlywine asked Davis what he meant and he said, "last night just didn't go the way it was supposed to."  Davis also told Earlywine he had been at home all night and reminded her that she had seen him both the previous night and that morning.  Earlywine noticed the phone at the Davis house was

9

ringing off the hook that morning during the three to four hours she was there. Before the killings, Davis had told Earlywine that he had been to the One Quail Place apartment.

On April 24, 1993, Watley, Parker and Brown went to a party at Johnson's group home. Johnson's foster mother bandaged a sizable cut on Watley's left hand which appeared to be getting red, ostensibly from infection. She asked Watley how he cut himself. Brown answered that Watley was just messing around and got cut. Watley also had quite a few other cuts on his hand.

On July 5, 1993, Autry Johnson had a conversation with Watley and Brown, during which Watley discussed the incident at One Quail Place where he killed three people.

The Riverside County Sheriff's Department sergeant interviewed Davis on two occasions. On May 3, 1993, Davis told the sergeant that victim Burris had been to his house on the evening of April 21, 1993 and left by midnight. Davis said Burris's mother called him around 2:00 a.m. on April 22, 1993, and asked him if he had seen her children. She called him a second time and told him about the killings. Davis said he had no idea who committed them. Davis also told the sergeant he did not know "K. J." but thought he had heard of a "K." On May 20, 1993, Davis admitted he knew K. J. Parker. He told this sergeant that he had denied knowing him earlier because he thought the officer was investigating an alleged fight between Parker and a neighbor.

Sometime after the killings, Davis told Zimmerle that the police were watching and he was going to go to Canada if anything happened. In June of 1993, Davis told one

of the teenagers, who had been at Hogue's apartment shortly before the crimes, "Motherfuckers are talking shit again.  Time to take three more motherfuckers out of this valley."  When she asked Davis what he was talking about, he said, "You know me."

A forensic pathologist performed the autopsies on all three victims.  Arnold had two fatal gunshot wounds to the head.  Burris had at least three penetrating incised wounds on the front of his neck, which the pathologist indicated were some of the deepest he had seen.  The soft tissue structures between Burris's skin and spine, including his trachea, esophagus, left carotid artery and left jugular vein, were completely severed and his spine had a crease on it from the sharp edge of a knife.  Burris also had two gunshot wounds to his head.  The two rapidly fatal wounds which severed Burris's trachea appeared to have preceded the rapidly fatal and non-fatal gunshot wounds to his head by "[l]ess than ten [minutes] probably.  Ten or so."  Hogue had a fatal gunshot wound to his head and a single stab wound to the back of his abdomen which was potentially fatal.  All three victims tested positive for methamphetamine or amphetamine.

The bullets recovered from the victims appeared to have BB's on the end with the exception of one of the bullets recovered from Arnold.  The casings, although very damaged, appeared to be .25 caliber and to have been fired from the same firearm.

Defendant was convicted of three counts of first degree murder, along with findings that the murders were committed during the commission of a felony.  The jury also found the multiple murder special circumstances true, along with the allegation that a

principle was armed with a handgun. He was sentenced to concurrent terms of life without possibility of parole, plus one year for the weapon enhancement.

Defendant appealed, and his convictions were affirmed (save for corrections to the abstract of judgment) on October 6, 1998 in an unpublished opinion. (*People v. Brown et al., supra*, E018586, [nonpub. opn].) In that appeal, defendant argued there was insufficient evidence to support the special circumstances finding because the record did not support a conclusion he was a "major participant" within the meaning of *Tison v. Arizona* (1987) 481 U.S. 137 (*Tison*). We disagreed, finding the evidence supported the finding he was an active participant, within the meaning of *Tison*. We also noted that Davis had expressed an intent to kill. The California Supreme Court denied review on January 20, 1999, *People v . Brown et al., supra*, S074595.

In 2019, following the enactment of Senate Bill 1437 and section 1170.95, defendant filed a petition for resentencing. The matter came up for hearing on February 14, 2020, at which time the court dismissed the petition. Defendant appeals.

**DISCUSSION**

a.      *Whether the Jury's Findings of Felony Murder Special Circumstances Rendered Defendant Ineligible for Relief Under Section 1170.95.*

Defendant argues that the fact the jury made true findings on the felony-murder special circumstances allegations, which specifically found the defendant was an active or major participant and that he acted with reckless indifference to human life, does not preclude relief under section 1170.95 because the 1996 findings were made before the

12

California Supreme Court decisions in *Banks*, discussing "major participant," and *Clark*, addressing "reckless indifference to human life." He therefore asserts that the special circumstances finding did not render him ineligible for relief. We disagree.

We, like several courts before us, recognize there is a split over whether such a pre-*Banks/Clark* felony-murder special circumstance finding renders a petitioner ineligible for relief under section 1170.95 as a matter of law. (See *People v. Jones* (2020) 56 Cal.App.5th 474, 478-479 (*Jones*), citing *People v. Gomez* (2020) 52 Cal.App.5th 1 (*Gomez*), review granted Oct. 14, 2020, S264033; *People v. Galvan* (2020) 52 Cal.App.5th 1134 (*Galvan*), review granted Oct. 14, 2020, S264284, and *People v. Allison* (2020) 55 Cal.App.5th 449 (*Allison*) [concluding the special circumstance finding renders a petitioner ineligible for relief as a matter of law; rev. denied *Allison*, [Dec. 23, 2020, S265450]; contrast with *People v. Torres* (2020) 46 Cal.App.5th 1168 (*Torres*), review granted June 24, 2020, S262011; *People v. Smith* (2020) 49 Cal.App.5th 85, review granted July 22, 2020, S262835; and *People v. York* (2020) 54 Cal.App.5th 250 (*York*) [reaching the conclusion that special circumstances findings do not preclude a defendant from obtaining relief pursuant to section 1170.95].)

Defendant urges us to follow *Torres* and its progeny. Respondent argues that the holding of *Torres,* was wrongly decided. We agree with the People, as well as with our sister courts in *Jones, Gomez, Galvan,* and *Allison*.

As we will explain, we agree with the *Gomez/Galvan* line of decisions and hold that *Banks* and *Clark* did not change the law, and that the prior felony-murder special

circumstance findings, as part of the record of conviction, renders Davis ineligible for relief under section 1170.95 as a matter of law. Further, we are also compelled to affirm because even without considering the elements found true in the felony-murder special circumstance finding, the record of conviction reveals the trial court found defendant had the intent to kill in denying defendant's motion for a new trial, where the challenge was directed at the murder convictions, and we affirmed that ruling.

At the center of the debate regarding the authority of a trial court to consider the special circumstances finding in ruling on section 1170.95 eligibility vis-à-vis the murder convictions is the question of what information the trial court may consider in making the initial eligibility determination. The question of whether and to what degree a superior court may consider the record of conviction in determining whether the defendant has made a prima facie showing of eligibility to relief has recently been answered by the California Supreme Court, approving such reference by the trial court after the appointment of counsel. (See, *People v. Lewis* (2021) ___ Cal.5th ___, ___[2021 Cal. LEXIS 5258, p. *29].)

1.      *Whether Banks and Clark Changed the Law or Narrowed the Definitions of Major Participant or Reckless Indifference to Human Life.*

Also at the center of this debate is the question whether *Banks* and *Clark* narrowed or otherwise altered the meaning of the terms "major participant" and acting with "reckless indifference to human life," which are key to eligibility or ineligibility for relief under section 1170.95. Defendant asserts the meaning of the terms has been narrowed

14

since 1996.  He therefore contends the fact that the jury found the special circumstance allegations (which included requirements the jury specifically find he was a major participant and that he acted with reckless indifference to human life) true, he is not precluded from relief under section 1170.95.

In addition to the *Gomez* and *Galvan* line of cases, even earlier cases, like that of *In re Miller* (2017) 14 Cal.App.5th 960, 979, concluded that *Banks* and *Clark* did not create new law; those decisions simply discussed what the terms "major participant" and "acting with reckless indifference to human life," actually meant for purposes of performing a substantial evidence review of felony murder special circumstances.  In *Banks,* the Supreme Court noted that the text of section 190.2, subdivision (d), adopted pursuant to the passage of Proposition 115 in 1990, was intended to codify the holding of *Tison, supra,* 481 U.S. at page 481, which articulated the constitutional limits on executing felony murderers who did not personally kill.  There, the California Supreme Court addressed the question of whether the defendant was a major participant in the homicide, describing the spectrum of culpability of people involved in murders that occur during the commission of underlying felonies.[3]  The courts then engaged in a substantial evidence review of the special circumstance finding, applying factors it discussed as aiding the determination of whether there is sufficient evidence to support the findings.  It said nothing about narrowing the definition of the term "major participant."

---

[3]  Courts often refer to this spectrum as the *Tison-Enmund* spectrum because it derives from the U.S. Supreme Court cases *Tison, supra*, 481 U.S. 137 and *Enmund v. Florida* (1982) 458 U.S. 782 [73 L.Ed.2d 1140, 102 S.Ct. 3368].

In *Clark, supra*, the court considered the sufficiency of the evidence to support the finding he acted with reckless indifference to human life, noting the overlap of the elements and concluding that the greater the defendant's participation in the felony murder, the more likely that he acted with reckless indifference to human life." (*Clark, supra,* 63 Cal.4th at p. 615, citing *Tison, supra*, 481 U.S. at p. 153.)

In explaining how to determine if there is substantial evidence of reckless indifference to human life, the court in *Clark* reasoned that "recklessness is not determined merely by reference to a defendant's subjective feeling that he or she is engaging in risky activities. Rather, recklessness is also determined by an objective standard, namely what 'a law-abiding person would observe in the actor's situation.' [Citation.]" (*Clark, supra,* 63 Cal.4th at p. 617.) The court then compared defendant's conduct against the factors and concluded that the defendant, who was a planner of the underlying felonies, but who was not physically present at the scene of the crimes and who had planned the burglary to occur after hours so as to minimize risks, did not act with reckless indifference to human life. (*Id.,* at p. 623.) The court reached its conclusion applying the substantial evidence standard of review (*ibid*) and did not declare it was narrowing the definition of "reckless indifference to human life."

Both *Banks* and *Clark* were decided after 1996, but they addressed the language of section 190.2, subdivision (d), which was enacted as part of Proposition 115 in 1990. Importantly, both cases involved review of the special circumstances finding on direct appeal. Neither case found the terms of section 190.2, subdivision (d) to be

unconstitutionally vague or ambiguous, or violative of *Tison/Enmund* principles. Had the court done so, it would call into question every special circumstance finding made since 1990 using the statutory terminology of "major participant" acting with "reckless indifference."

Thus, the court did not announce a new rule defining the terms or condemning jury instructions given in cases where special circumstances findings must be made. Instead, all the cases, even those holding that felony murder special circumstances findings do not preclude relief, agree that the language of section 189, subdivision (e)(3), as amended by Senate Bill 1437, tracks the language of the special circumstance provision. (*York, supra,* 54 Cal.App.5th at p. 258; *Jones, supra,* 56 Cal.App.5th at p. 482; see also, *People v. Gutierrez-Salazar* (2019) 38 Cal.App.5th 411, 419 [concluding that because "[t]he language of the special circumstance tracks the language of Senate Bill 1437 and the new felony-murder statutes," a jury's true finding on § 190.2, subd. (d) renders a § 1170.95 petitioner ineligible for relief].)

Logically, if the Supreme Court had intended to narrow or alter our understanding of what "major participation" or "reckless indifference" means in *Banks* or *Clark*, it would not have resolved either case based on a determination of whether there was substantial evidence; instead, it would have announced a new rule requiring that juries be instructed to consider the factors it had outlined before making a finding on a special circumstance allegation. It did not.

17

Instead, applying factors to aid in the evaluation of the defendant's conduct in an appeal challenging the sufficiency of the evidence to support the felony-murder special circumstances finding, the court in *Banks* concluded that the evidence was insufficient as a matter of law to support the finding that *Banks*' codefendant Matthews was an major participant within the meaning of section 190.2, subdivision (d). Similarly, in *Clark*, it concluded there was insufficient evidence that defendant was recklessly indifferent to human life for purposes of robbery-murder and burglary-murder special circumstance findings.

2. *Trial and Appellate Courts Evaluate Section 1170.95 Petitions on the Basis of the Record of Conviction.*

Having addressed whether *Banks* and *Clark* changed the law, we turn to the manner in which courts evaluate eligibility for relief under section 1170.95. In *Gomez,* this court concluded the petition was properly denied without issuing an OSC and holding an evidentiary hearing "because the record of conviction established, as a matter of law, that Gomez is ineligible for relief under section 1170.95." We reasoned that considering the fact that in finding the robbery and kidnapping special circumstance allegations true, the jury necessarily found that Gomez either participated in the alleged robbery and kidnapping with the intent to kill the victim, or that she was a major participant in those crimes who acted with reckless indifference to the victim's life, and was therefore ineligible. (*Gomez, supra*, 52 Cal.App.5th at p. 14, 15, review granted Oct. 14, 2020, S264033.)

18

In reaching this conclusion, we reasoned that the trial court properly looked to the record of conviction, including the jury instructions given at trial, in determining whether Gomez made the required prima facie showing under section 1170.95, particularly where, as here, the petition contains only conclusory allegations that the petitioner is entitled to relief. (*Gomez, supra*, 52 Cal.App.5th at p. 16.)

In a subsequent decision, we reiterated this view. (*People v. Law* (2020) 48 Cal.App.5th 811, 821 [review granted July 8, 2020, S262490] (*Law*).) In *Law*, we relied on *Lewis, supra*, then still pending in the Supreme Court, and *People v. Verdugo* (2020) 44 Cal.App.5th 320 (*Verdugo*) at pages 329-330, in agreeing that "a trial court may consider the record of the petitioner's conviction, including documents in the court's own file and the appellate opinion resolving the defendant's direct appeal." (*Law*, *supra*, 48 Cal.App.5th at p. 821.) Recently, the California Supreme Court indicated its accord. (*People v. Lewis* (2021) ___Cal.5th ___, ___[2021 Cal. LEXIS 5258, p. *29].) In *Law*, we agreed in part with the defendant's argument that he was entitled to a determination whether the special circumstances findings satisfied *Banks* and *Clark*, but deemed any error harmless because the record of conviction demonstrated that defendant was not eligible as a matter of law. (*Law*, *supra*, at p. 825.)

In a more recent opinion, we again adopted this principle, concluding that "a trial judge may consider a prior appellate decision at the earlier stage of determining whether a petitioner has made a prima facie showing entitling them to a hearing on the merits." (*People v. Clements* (2021) 60 Cal.App.5th 597, 612.) The bottom line is that we must

19

look to the record of conviction as a whole to determine if the defendant is eligible for relief as a matter of law.

In the present case, the record of conviction includes special circumstances finding where the jury was expressly instructed to determine whether defendant was a major participant and that he acted with reckless indifference to human life and made those findings. As part of the record of conviction, the trial court properly considered it in ruling on the petition. The record of conviction also includes our decision in the direct appeal, citing the evidence supporting the special circumstances findings. Because the record of conviction includes specific findings that defendant was a major participant acting with reckless indifference to human life, which we upheld on direct appeal, the trial court properly considered it in determining if he was eligible for resentencing under section 1170.95. In this respect, "[n]o weighing of the evidence [was] involved in applying the substantial evidence test." (*People v. Garcia* (2020) 57 Cal.App.5th 100, 115, citing *People v. Marsh* (1959) 170 Cal.App.2d 284, 288; *People v. Otterman* (1957) 154 Cal.App.2d 193, 202.)

The special circumstances findings, as part of the record of conviction, were properly considered by the court and established defendant's ineligibility for resentencing relief under section 1170.95.

*b.      Whether the Prior Appellate Decision, Which Rejected Defendant's Claim of Insufficiency of Evidence to Support the Felony Murder Special Circumstance Findings Constituted a Finding that Defendant Did, In Fact, Act as a Major Participant and with Reckless Indifference.*

Defendant asserts that despite our opinion in the direct appeal upholding the true findings of the special circumstances, it did not constitute a determination that defendant did, in fact, act as a major participant and with reckless indifference to human life.  He argues that the standard used to assess a claim of insufficiency of the evidence on direct appeal does not apply in determining whether a petitioner under section 1170.95 has made a prima facie showing to entitle him to an evidentiary hearing.  From this he maintains that our prior finding on direct appeal (for which review was denied by the Supreme Court), where we rejected his claim of insufficiency of the evidence to support the felony murder special circumstance findings, cannot be viewed as a finding that defendant did, in fact, act as a major participant and with reckless indifference.  Defendant misunderstands the function of the trial court in reviewing a section 1170.95 petition.

The inherent fallacy of defendant's argument is the implication that the section 1170.95 petition can be used to collaterally attack the special circumstances findings, despite the multiple rejections of his collateral challenges by both this court and by the

21

Supreme Court.[4]  However, his assertion ignores the fundamental premise that "jury findings in a final judgment are generally considered to be valid and binding unless and until they are overturned by collateral attack, regardless of whether they are subject to appellate review.  Nothing in *Banks* or *Clark* supports the automatic invalidation or disregard of such findings by a properly instructed jury."  (*People v. Nunez* (2020) 57 Cal.App.5th 78, 94, review granted January 13, 2021, S265918.)

Our prior decision rejecting his challenge to the special circumstances finding does not "constitute a finding" that defendant was a major participant acting with reckless disregard for human life, because we were tasked solely with determining whether, as a matter of law, there was substantial evidence to support the finding.  But our opinion, as well as the other matters included in part of the record of conviction, were considered in determining the defendant's eligibility for resentencing under section 1170.95.  He implies that he is permitted to seek re-examination of the evidentiary sufficiency to support the special circumstances findings in reviewing a ruling on a section 1170.95 petition.  Irrespective of our prior rejection of his challenges to the evidentiary sufficiency of the findings on the special circumstances allegations, the verdicts and

---

[4]  We rejected his challenge to the sufficiency of the evidence to support the felony murder special circumstances finding in the direct appeal, and the Supreme Court denied review.  (*People v. Brown et al.* [1999 Cal. Lexis 340], S074595, review denied Jan. 20, 1999.)  Defendant subsequently filed a petition for writ of habeas corpus, collaterally challenging the special circumstances findings, specifically addressing the impact of *Banks* on the determination that he was a major participant.  (*In re Davis on Habeas Corpus*, E070282, denied June 11, 2018.)  While that petition was still pending, he filed another petition for writ of habeas corpus in the Supreme Court (*In re Davis on Habeas Corpus* [2018 Cal. Lexis 7410], S249000), and it was denied on September 19, 2018.

22

findings are still part of the record of conviction, and until they are set aside by way of collateral attack, by way of habeas corpus, they are presumed valid.

A trial court considering a petition for resentencing pursuant to section 1170.95 does not act as a finder of fact. It does not review the validity of the convictions or of the special circumstances and section 1170.95 is not the proper vehicle to collaterally attack the findings. A trial court considering a section 1170.95 petition simply determines whether, based on the record of conviction, the defendant is eligible for or entitled to resentencing relief. On appeal, we determine whether the record of conviction supports the trial court's determination that defendant was ineligible for relief under section 1170.95.

The exact parameters of what constitutes the "record of conviction" have not been precisely defined. (*People v. Woodell* (1998) 17 Cal.4th 448, 454.) It has been held that the record of conviction includes the charging document and court records reflecting a defendant's admission, no contest plea, or guilty plea. (*People v. Reed* (1996) 13 Cal.4th 217, 224 (*Reed*).) In *Reed,* the reviewing court recognized that the term "record of conviction" could be "used technically, as equivalent to the record on appeal [citation], or more narrowly, as referring only to those record documents reliably reflecting the facts of the offense for which the defendant was convicted." (*Id.* at p. 223.)

Additionally, "facts established within the record of conviction, even if those facts were not essential to the judgment" may be considered. (*People v. Smith* (1988) 206 Cal.App.3d 340, 344.) The record of conviction also includes pretrial motions and

23

closing arguments (*People v. White* (2014) 223 Cal.App.4th 512, 525), the prior opinion in defendant's appeal (*People v. Brimmer* (2014) 230 Cal.App.4th 782, 800-801), and the transcript of a preliminary hearing. (*Reed, supra*, 13 Cal.4th at p. 230; *People v. Trujillo* (2006) 40 Cal.4th 165, 177.)

In considering the petition under section 1170.95, unless otherwise directed by the California Supreme Court, a trial court can consider these records, which include the special circumstances findings and the verdicts and other documents that would be part of the record on appeal, in determining whether defendant's conviction is eligible for resentencing. In similar proceedings, this process has been endorsed by the Supreme Court. (See *People v. Perez* (2018) 4 Cal.5th 1055, 1066 [under Three Strikes Reform of 2012, the trial court's eligibility determination, to the extent it was "'based on the evidence found in the record of conviction,'" is a factual determination reviewed on appeal for substantial evidence]; see also, *People v. Williams* (2020) 57 Cal.App.5th 652, 661, 664 [substantial evidence supported a finding that defendant was not eligible for resentencing under *Banks* and *Clark*; reviewing court stated the rules of evidence governing a section 1170.95 subdivision (d)(3) hearing should be no different than those applied at other analogous postconviction resentencing proceedings.].)

But in reviewing prior serious felony convictions, the Supreme Court restricted review to the record of conviction to bar the People from relitigating the circumstances of a crime committed years ago. (*Reed, supra,* 13 Cal.4th at p. 223.) The same concern for finality of judgment should govern here: review must be restricted to the record of

24

conviction to prevent both sides from relitigating the circumstances of a crime committed years ago.

In ruling on a petition for resentencing pursuant to section 1170.126, the trial court may consider the entire record of conviction including the transcript of the trial testimony and the appellate opinion affirming the judgment of conviction.[5]  (*People v. Woodell, supra,* 17 Cal.4th at p. 456; *People v. Blakely* (2014) 225 Cal.App.4th 1042, 1063.)  In this case, that includes the special circumstances finding as well as the instructions.[6]

Because the special circumstance findings are part of the record of conviction, a pre-Senate Bill 1437 felony murder defendant is in no different position than the post-Senate Bill 1437 felony murder defendant, because a jury has determined beyond a reasonable doubt as to the felony murder of which he or she was convicted, he or she acted as a major participant with reckless indifference to human life.[7]

---

[5]  The process for determining eligibility for resentencing under section 1170.95 is similar to that followed in determining eligibility under the Three Strikes Reform Act, pursuant to Proposition 36.  Section 1170.126 provides that an inmate serving a three strikes sentence may be eligible for resentencing where the current felony conviction is not a serious or violent felony.  (*People v. Johnson* (2015) 61 Cal.4th 674, 682.)  To make this determination, "the trial court may consider the entire record of conviction including the transcript of the trial testimony and the appellate opinion affirming the judgment of conviction."  (*People v. Cruz* (2017) 15 Cal.App.5th 1105, 1110, citing *People v. Woodell* (1998) 17 Cal.4th 448, 456; *People v. Blakely* (2014) 225 Cal.App.4th 1042, 1063.)

[6]  At defendant's request, we augmented the record on appeal to include the instructions read to the jury, including CALJIC No. 8.80.1.

[7]  Now that the operative language of CALJIC No. 8.80.1, formerly instructing the jury on the special circumstances allegation, has been incorporated into section 189, subdivision (e)(3), a defendant who was not the actual killer may be convicted of first

*[footnote continued on next page]*

It is irrelevant whether, as defendant has framed the issue, our prior opinion "constitute[d] a finding that defendant did, in fact, act as a major participant and with reckless indifference," because on appeal we were charged with determining if there was substantial evidence to support the jury's finding of those circumstances. Instead, it was the jury's verdicts and special circumstances findings themselves, which are part of the record of conviction, that constitute the finding that defendant acted as a major participant and with reckless indifference to human life. Nevertheless, our opinion is part of the record of conviction, which the trial court could consider in determining if defendant was eligible for relief and we may consider in determining whether error occurred.

Whether our rejection of defendant's challenge to the sufficiency of the evidence to support the special circumstances finding constituted a determination that defendant did, in fact, act as a major participant with reckless indifference to human life is not at issue and was not relevant to the trial court's finding he was ineligible for relief. We only review whether the trial court erroneously denied relief after considering the record of conviction.

---

degree murder based on the finding he was a major participant who acted with reckless indifference to human life, but is unlikely to incur a special circumstance finding based on section 190.2, subdivision (a)(17) because now a jury must find, in addition to the felony murder special circumstance, that the defendant had the intent to kill. (§ 190.2, subd. (c).)

26

*c.      Whether the Record of Conviction Supports the Lower Court's Denial of the Petition.*

Defendant argues the record of conviction does not support the denial of his section 1170.95 petition.  We disagree.

As the People have pointed out, defendant did not preserve this claim for review in the trial court, so it has been forfeited.  (*Gilmore v. Superior Court* (1991) 230 Cal.App.3d 416, 419.)  Nevertheless, we may review it to forestall a claim of ineffective assistance of counsel.  (See *People v. Scaffidi* (1992) 11 Cal.App.4th 145, 151.)  On the merits, the record of conviction amply supports the trial court's findings.

A petitioner is eligible for relief if he or she makes a prima facie showing of the three criteria listed in section 1170.95, subdivision (a):  namely he or she (1) was charged with murder "'under a theory of felony murder or murder under the natural and probable consequences doctrine,'" (2) was convicted of first or second degree murder, and (3) can no longer be convicted of first or second degree murder "'because of changes to Section 188 or 189 made effective January 1, 2019.'  [Citation.]"  (*People v. Drayton* (2020) 47 Cal.App.5th 965, 973 (*Drayton*).)

The procedure for determining the existence of a prima facie right to relief under section 1170.95 is similar to the prima facie review procedure performed in habeas corpus proceedings, as a gatekeeping function, where a review of the record of conviction is considered in determining, as a threshold matter, whether there is a prima facie

27

showing that defendant is entitled to relief.[8]  Section 1170.95 contains similar provisions, indicating the Legislature intended to supplement the facial sufficiency review of the petition with an additional layer of review before determining if the defendant is eligible.

When considering whether a habeas corpus petition makes a prima facie showing of entitlement to relief, "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved." (*Drayton, supra*, 47 Cal.App.5th at p. 978.)

A court receiving a petition for habeas corpus relief "evaluates it by asking whether, assuming the petition's factual allegations are true, the petitioner would be entitled to relief.  [Citations.]  If no prima facie case for relief is stated, the court will summarily deny the petition.  If, however, the court finds the factual allegations, taken as true, establish a prima facie case for relief, the court will issue an [order to show cause]." (*People v. Duvall* (1995) 9 Cal.4th 464, 474–475.)  When reviewing a petition seeking habeas corpus relief, a court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing to obtain credibility determinations.  (See *In re Serrano* (1995) 10 Cal.4th 447, 456 (*Serrano*); see also *In re Lawley* (2008) 42 Cal.4th 1231, 1241.)

However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a

---

[8]  Note that we are not saying that a section 1170.95 petition may be used to conduct a collateral challenge to a final and presumptively valid judgment.  Instead, we emphasize the similarity in approach to determining whether the defendant is, first, eligible, and, then, entitled to relief.

28

credibility determination adverse to the petitioner." (*Serrano, supra*, 10 Cal.4th at p. 456; see also, *Drayton, supra,* 47 Cal.App.5th at pp. 978-979.)

Section 1170.95, subdivision (c) contemplates a similar type of court review before an order to show cause may issue. The first level is preliminary and facial, determining if the defendant's criminal conviction is subject to resentencing. At this stage, the court determines if defendant was convicted of first or second degree murder. This may require briefing to determine whether the petitioner has made a prima facie showing he or she falls within section 1170.95. (*Verdugo, supra,* 44 Cal.App.5th at p. 328.)

The second level of the initial review has been compared with the decision-making process undertaken in habeas proceedings that the petitioner [citation] ""'"has made a sufficient prima facie statement of specific facts which, if established, entitle him to . . . relief.'"" (*Verdugo, supra,* 44 Cal.App.5th at p. 328.)

"'Just as in habeas corpus, if the record "contain[s] facts refuting the allegations made in the petition . . . the court is justified in making a credibility determination adverse to the petitioner." [Citation.] However, this authority to make determinations without conducting an evidentiary hearing pursuant to section 1170.95, [subdivision] (d) is limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion (such as determining whether the petitioner showed reckless indifference to human life in the commission of the crime).' [Citations.]" (*People v. Harris* (2021) 60 Cal.App.5th

939, 958; see also, *People v. Perez* (2020) 54 Cal.App.5th 896, 903–904, review granted

Dec. 9, 2020, S265254; *People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1165–1166.)

This second level of initial eligibility review entails examination of the record of

conviction in a habeas review.  A similar second level of eligibility review occurs when a

court considers whether an order to show case should be issued in a proceeding under

section 1170.95, and it, too, entails a review of the record of conviction.  This approach

avoids the need to issue an order to show cause where the record of conviction

establishes the defendant is ineligible, notwithstanding the allegations made in

defendant's petition, thereby conserving scarce judicial resources.

The record of conviction in this case includes the appellate decision in defendant's

direct appeal, where he challenged his special circumstances finding on the basis of the

holding in *Tison* on direct appeal, as well as his murder convictions.  It also includes the

jury verdicts and findings, as well as the instructions given (CALJIC No. 8.80.1,

requiring the jury to find defendant was an major participant who acted with reckless

indifference to human life).  These matters all comprise the record of conviction in

addition to other matters of record.  All were properly considered by the trial court.

Significantly, at his trial, the jury was expressly instructed that it must find

defendant was a "major participant" who acted with "reckless indifference to human life"

in order find the special circumstances allegation true.  This finding classified the

conviction as something more than a garden variety felony murder conviction, where,

prior to the enactment of Senate Bill 1437, could be grounded on something less than

30

being a major participant acting with reckless disregard for human life. The fact that defendant's direct appeal expressly considered the sufficiency of the evidence to support the felony murder special circumstances finding and affirmed them could also be considered both by the trial court and this court. The trial court properly could rely on the special circumstances finding in determining defendant was ineligible.

But there is more. The record of conviction also includes evidence that defendant planned the crimes, made statements that he wanted to kill Burris, was angry at Hogue, and that he was present when the killings took place. The trial court properly considered defendant ineligible: all the ingredients needed to satisfy the amended provisions of section 189 were present.

Although Senate Bill 1437 has a remedial purpose, the amendment to section 189 was not intended to eliminate *all* felony murder convictions. Instead, under the new law, an accomplice or aider-abettor respecting the underlying felony, who was not the actual killer, cannot be convicted of felony murder unless he or she aided in the murder with the intent to kill or was "a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189.) The record of conviction supports the conclusion defendant was ineligible based on both the special circumstances findings and the evidence of his express intent to kill, even though the convictions and special circumstances findings predated *Banks* and *Clark*.

31

*d. Whether the Lower Court Improperly Made Its Own Findings Based on the Record and the Appellate Review of the Underlying Conviction in Determining that Any Error Was Harmless.*

Defendant argues that a court may not make its own factual findings and legal conclusions from the record, including the opinion on direct appeal, to deny a petition filed pursuant to section 1170.95. He does not, however, identify any improper factual findings. The only determination made by the trial court, and the only determination submitted for our review, is whether the trial court correctly found the defendant ineligible for resentencing.

Defendant points out that in *Law, supra,* 48 Cal.App.5th 811, review granted July 8, 2020, S262490, we determined that defendant was entitled to a determination of whether his special circumstances findings comported with *Banks* and *Clark* but we concluded the error was harmless and affirmed the trial court's denial of a section 1170.95 petition. Defendant argues that this is inconsistent with the structure and purpose of section 1170.95 but does not explain how it infects the trial court's ruling in the present case.

In *Law*, we agreed that a pre-*Banks* and pre-*Clark* special circumstances finding did not preclude relief under section 1170.95 as a matter of law. (*Law, supra*, 48 Cal.App.5th at p. 825, review granted July 8, 2020, S262490; see also *People v. Harris, supra*, 60 Cal.App.5th at p. 957.) We also held it is proper for a trial court to review the record of conviction when determining whether a section 1170.95 petitioner has stated a

32

prima facie claim for relief.  (*Law, supra*, at p. 816.)  The determination of whether the special circumstances finding precluded relief under section 1170.95 as a matter of law in that case was based on a different record of conviction.  Nonetheless, we concluded the record of conviction was properly considered in determining the defendant was ineligible.

Thus, while we agreed that Law was entitled to a determination of whether the trial evidence is sufficient to support the section 190.2 special circumstances finding applying *Banks* and *Clark*, we concluded that even under the principles articulated in *Banks* and *Clark,* he undoubtedly qualified as a major participant who acted with reckless indifference to human life, a conclusion that rendered him ineligible for relief under section 1170.95.  (*Law, supra*, 48 Cal.App.5th at p. 816.)

We concluded any error was harmless under *Law* because after reviewing the record of conviction, including our opinion on direct appeal, there was no possibility of a different determination, because "[w]hether there is sufficient evidence that Law was a major participant in the robbery who acted with reckless indifference to human life is a question we can decide on appeal."[9]  (*Law, supra,* 48 Cal.App.5th at p. 822.)

Here, whether there is sufficient evidence that defendant was a major participant acting with reckless indifference to human life, or had the requisite intent to kill, is a

---

[9] To the extent defendant asserts that the superior court engaged in improper fact finding in denying his section 1170.95 petition, he is wrong.  The court made no findings whatsoever.  The prosecutor argued that the jury had been instructed with CALJIC No. 8.80.1 which required the jury to find that the defendant was a major participant who acted with reckless indifference.  Defense counsel did not object, and the court denied the petition.  There was no fact-finding by the court.  Because the trial judge did not give any reasons for the ruling, it is speculation to say he made his ruling by engaging in improper fact-finding.

question we can decide on appeal by reviewing the record of conviction, pursuant to our holding in *Law.* (*Law, supra,* 48 Cal.App.5th at p. 822.) The record of conviction supports the denial of the petition based on both the determination he was a major participant acting with reckless indifference to human life, and the evidence that, "with the intent to kill, he aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree." (§ 189, subd. (e)(2).)

Our conclusion does not frustrate the ameliorative purposes of section 1170.95. Defendant emphasizes the ameliorative benefits were to prevent erroneous murder convictions for persons who were not the killer, not a major participant, and did not act with reckless indifference to human life. We agree. However, the provisions of Senate Bill 1437 and section 1170.95 were not intended to wipe out all felony murder convictions. Unfortunately, defendant does not fall into the class of persons who were erroneously convicted of murder under the felony murder doctrine.

He also argues that "[t]he structure and purpose of section 1170.95 compel the conclusion that courts should not make fact findings of their own to deny a prima facie showing and thus preclude a hearing." We agree that section 1170.95 sets a low bar for ordering an evidentiary hearing as defendant suggests. But a "low bar" is not synonymous with "no bar." The defendant must still establish his eligibility for relief in the petition. But where his assertions in the petition are belied by matters in his record of conviction, a trial court may conclude he is ineligible.

Defendant's reliance on *Law* suggests he assumes that the trial court in his case denied the petition based solely on the special circumstances finding, and he asserts we must find error here because we found error in *Law,* going on to argue that we are precluded from finding the error harmless, although we did in *Law*. Defendant cannot have it both ways. If we follow *Law,* then we must review the record of conviction to determine whether the special circumstances preclude him from relief under section 1170.95.

We cannot say for certain that the trial court denied the petition based solely on the special circumstances finding, although that is one possibility on this record. However, it is presumed that the court considered the entire record of conviction. In any event, we have reviewed the trial court's determination, and we conclude defendant is ineligible based on his record of conviction: viewed along the *Tison-Enmund* spectrum, defendant's conduct establishes he was a major participant who acted with reckless indifference to human life as a matter of law, within the holdings of *Banks* and *Clark.* He was not a mere getaway driver who did not enter the residence where the crimes were committed. Even without considering the special circumstances finding, the record of conviction shows he planned the crimes and expressly intended to kill at least one of the victims in the course of the robberies he masterminded.

Affirmance of the denial of the section 1170.95 petition does not undermine the remedial purposes of Senate Bill 1437; it promotes them.

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ_____
                                                                P. J.


I concur:

McKINSTER_____
                          J.

36

[*People v. Davis*, E074748]

RAPHAEL, J.

I respectfully dissent, as I would remand to the trial court for an evidentiary hearing pursuant to Penal Code section 1170.95, subdivision (d).[1]

In this case, the trial court denied petitioner an evidentiary hearing upon finding that he had not stated a prima facie case for section 1170.95 relief.  The parties' briefing addresses a split in Court of Appeal caselaw that is set to be resolved in *People v. Strong*, review granted, March 10, 2021, S266606.  The split concerns the effect on a section 1170.95 challenge to a murder conviction of a felony murder special circumstance finding that came before *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*).  (Maj. opn. *ante*, at pp. 12-13.)  The majority follows the cases holding that review of the murder conviction is precluded unless the defendant succeeds in setting aside the special circumstance finding by a petition for a writ of habeas corpus; if the defendant succeeds in doing that, the defendant "would then be in a position to successfully petition under section 1170.95 to vacate her murder conviction."  (*People v. Gomez* (2020) 52 Cal.App.5th 1, 17, review granted, S264033, Oct. 14, 2020.)

In contrast, I agree with the line of cases holding that a section 1170.95 challenge is not precluded by a pre-*Banks*/*Clark* special circumstance finding.  Our division reached this conclusion in *People v. Law* (2020) 48 Cal.App.5th 811, 822, though not in

---

[1]  Undesignated statutory references are to the Penal Code.

other cases.  Opinions in the other two divisions of the Fourth District also have recently held that a special circumstance finding does not preclude section 1170.95 relief.  (See *(People v. Arias (*July 22, 2021, No. D077778) ___Cal.App.5th___ [2021 Cal. App. LEXIS 597].); *People v. Gonzalez* (2021) 65 Cal.App.5th 420, 430 (*Gonzalez*).)  Various other divisions have held as much.  (See, e.g., *People v. Pineda* (2021) 66 Cal.App.5th 792, 797; *People v. Secrease* (2021) 63 Cal.App.5th 231, review granted, June 30, 2021, S268862; *People v. Harris* (2021) 60 Cal.App.5th 939, 954-955 (*Harris*).)

In a section 1170.95 petition, a defendant convicted on a felony murder theory may set aside his murder conviction if he cannot be convicted based on the changes to the murder law (in § 189, subd. (e)(3)) effective at the beginning of 2019; that is, if he was not a major participant in the underlying felony who acted with reckless indifference to human life.  Even under the majority's side of the caselaw split, the law does not prohibit a petitioner from *ever* succeeding in a section 1170.95 challenge.  Our Supreme Court has held that because *Banks* and *Clark* "clarified the meaning of the special circumstances statute," a defendant may successfully bring a petition for habeas corpus to set aside felony murder special circumstance findings, even if he unsuccessfully challenged the special circumstance before *Banks* and *Clark*.  (*In re Scoggins* (2020) 9 Cal.5th 667, 673-674.)  Thus, a petitioner could in theory prevail on such a habeas petition, clearing the way for a successful section 1170.95 petition.

But I do not think anything in section 1170.95 *requires* a gateway habeas challenge to the special circumstance rather than a court simply considering whether to vacate the murder conviction under section 1170.95, subdivision (d).  I certainly think the

Legislature would not have intended a habeas petition as a prerequisite. A habeas petition is subject to various procedural bars that can preclude a court's review of it, ensuring a court would never review the murder conviction even if the petitioner had a winning case on its merits. Here, a habeas petition filed by petitioner qualifies to be dismissed as successive. If we relegate such a petitioner to the habeas court, we may be ensuring that his section 1170.95 petition can never be heard, regardless of its strength. As well, section 1170.95, subdivision (d)(3) allows the parties to offer new evidence to evaluate the murder conviction, an opportunity not typically available on habeas.

Absent a bar to a court entertaining petitioner's section 1170.95 petition, it was error for the trial court to find that petitioner had not stated a prima facie case. Rather, the trial court should review petitioner's claim upon a full evidentiary hearing. As our Supreme Court recently stated, the bar for a petitioner demonstrating a prima facie case was "'intentionally and correctly set very low.'" (*People v. Lewis* (2021) __ Cal.5th __ [2021 Cal.Lexis 5258 at p. *32][quoting People's argument].) Our Supreme Court stated that the prima facie determination does not involve "'factfinding involving the weighing of evidence or the exercise of discretion.'" (*Id.* at pp. *31-32 [quoting *People v. Drayton* (2020) 47 Cal.App.5th 965, 980 (*Drayton*)].) *Drayton* held that at the prima facie case stage, a court's authority is "limited to readily ascertainable facts from the record (such as the crime of conviction)" but not factfinding "such as determining whether the petitioner showed reckless indifference to human life in the commission of the crime." (*Drayton*, *supra*, 47 Cal.App.5th at p. 980).) As the Fourth District, Division Three recently held: "Because the trial court may not engage in factfinding at this early stage, any analysis

3

under *Banks* and *Clark* was improper without first conducting an evidentiary hearing pursuant to section 1170.95, subdivision (d)." (*Gonzalez*, *supra*, 65 Cal.App.5th at p. 431; see also *Harris*, *supra*, 60 Cal.App.5th at p. 958 ["in evaluating whether a petitioner has made a prima facie showing he or she is entitled to relief[] the superior court cannot engage in factfinding"].)

Of course, when courts hold an *evidentiary hearing* on a section 1170.95 petition, they can consider the entire record of conviction, along with any other evidence presented. (See *People v. Clements* (2021) 60 Cal.App.5th 597, 614.) We review for substantial evidence the trial court's factual findings after a section 1170.95 evidentiary hearing (*id.* at p. 618), but we do not do the fact finding. It is for the trial court to determine whether "the record of conviction and any new or additional evidence the parties submit establish beyond a reasonable doubt that [the petitioner] committed murder under the amended law." (*People v. Clements*, *supra*, 60 Cal.App.5th at p. 614.)

Here, because no court has determined that the facts of petitioner's conviction were sufficient under *Banks* and *Clark*, I would not hold review of his petition precluded as a matter of law by the special circumstance finding. I would reverse and remand for the trial court to hold a hearing under section 1170.95, subdivision (d) on whether petitioner is guilty of murder under a still viable theory.

RAPHAEL     

J.

4